Argued April 15, affirmed June 17, 1924.

## BOOTH FISHERIES CO. *v.* F. P. KENDALL et al.

(227 Pac. 291.)

**Fish—Corporation not Entitled to License, and Statute Valid.**

1.  Under Laws of 1921, page 156, Section 135, as amended by Laws 1923, page 478, Section 5, when construed with Sections 121 122, 131, 132, and 137 a license to operate a gill-net for salmon fishing cannot be issued to a corporation, the general statutory direction of Section 33 that the word "person" includes corporations not prevailing over the specific statutory directions as to qualification of licensees; and such statute deprives foreign corporations of no constitutional rights.

**Statutes—Courts must Give Effect to Evident Meaning.**

2.  It is a duty of the court to give effect to the evident meaning of a statute.

From Marion: George G. Bingham, Judge.

In Banc.

For appellant there was a brief over the names of *Messrs. McCamant & Thompson* and *Messrs. G. C. & A. C. Fulton,* with an oral argument by *Mr. W. Lair Thompson.*

For respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral

argument by *Mr. Willis S. Moore,* Assistant Attorney General.

RAND, J.—Prior to the enactment of Chapter 295, Laws of 1923, the plaintiff, a Delaware corporation, was duly licensed to operate and did operate fishing boats and gill-nets for taking salmon in the waters of the Columbia River. Since that enactment the master fish-warden of the state has refused and still refuses to issue a license to plaintiff authorizing it to operate gill-nets for the purpose of fishing for salmon.

It is admitted that plaintiff is authorized to do business in this state. Section 132 of Chapter 105, Laws of 1921, contains this provision: "nor shall any license be issued to a corporation unless it is authorized to do business in this state." Under this provision the statute makes no distinction between a corporation organized under the laws of a sister state and a corporation organized under the laws of this state in the right and power of such corporation to do any act which it is lawful for a corporation to do under the act in question, and no distinction as to the right of a corporation, whether domestic or foreign, to be licensed, has been made by the master fish-warden, who, since the passage of the act, has at all times refused to issue to any corporation a license to operate gill-nets.

It appears from the agreed statement of facts that gill-nets are operated from boats and that the services of two men are required to operate a boat and gill-net, and that one of these men is designated as the "captain," and the other as the "boat-puller." Plaintiff's application was for a license to operate a gill-net.

1, 2. By Chapter 295, Laws of 1923, Chapter 105, Laws of 1921, which is designated as the "commercial

Fisheries Code of Oregon," was amended. As so amended Section 135 of Chapter 105, Laws of 1921, provides that licenses "shall be issued to any qualified person or corporation by the master fish warden, upon application therefor, and the payment of the license fees herein required." It also provides that a separate license shall be required for each gill-net used in fishing for salmon. In amending that section the legislature added the following proviso: "provided, however, that no gill-net licenses or boat puller licenses shall be issued in the name of or to any applicant unless the said applicant is to be engaged personally in the operation of said gill-net or boat used in the operation thereof."

In *Alsos* v. *Kendall,* this day decided, *ante,* p. 359 (227 Pac. 286), it was held that each person engaged in the operation of a boat and gill-net used for taking salmon, must be licensed, and that no person can be so licensed unless a citizen of the United States and a resident of this state for one year prior to the time of the filing of his application for a license. In the operation of a gill-net fishing boat the statute requires three separate licenses, one for the gill-net itself, and one for each of the two persons operating the boat and gill-net. It is elementary that a corporation acts through its agents, servants and employees. It may authorize its agents to do any corporate act which the corporation itself is authorized to do, but the corporation itself cannot, as a legal entity, while acting through an agent or an employee, personally operate a boat and gill-net. It would seem that when each of its employees was duly licensed to operate a boat and gill-net and a separate license was issued to the corporation to operate its gill-net, the interests of the state would be fully protected, but as to those matters

they are all subject to the legislative will of the state. It was within the legislative power of the state to enact the proviso in question, and presumably, by the insertion of this proviso into the statute by way of an amendment to the then existing law, the legislature intended to limit the issuance of gill-net licenses to those only who were to be personally engaged in the operation of gill-nets. Such being the intent of the legislature, it is the duty of the court to give effect to the evident meaning of the statute. That such was the evident intent of the legislature appears from other amendments to the ` original act. As originally enacted, Section 137 of Chapter 105 provided that ''every person, firm or corporation operating any of the appliances hereinbefore mentioned in the waters of the state of Oregon * * shall pay in addition to the license fee required for the operation of said gear, the sum of one quarter of a cent per pound for each pound of each and every species of salmon.'' As amended by Chapter 295, Laws of 1923, this provision was omitted and the section now reads: ''Every person, firm or corporation operating as a canner, receiver, buyer or wholesaler of salmon, shad or sturgeon, shall pay, in addition to all other licenses or fees provided by law, the sum of one-half cent per pound on each and every species of salmon.'' As originally enacted the statute required the person, firm or corporation taking the fish from the water to pay the poundage fee. As amended that fee is now paid, not by the one who catches the fish, but by the canner or whoever handles or markets the salmon.

As originally enacted and as still in full force and effect, Section 121 of Chapter 105 declares it to ''be unlawful to take, catch or fish for, buy, sell, can,

pack or otherwise deal in or handle any salmon fish
* * without first obtaining a license therefor.'' And
Section 131 provides that ''it shall be unlawful for
any person to fish or take for sale or profit any
salmon * * unless such person be a citizen of the
United States and has been for one year * * an ac-
tual resident of the state.'' Section 132 provides:
''No license for taking or catching salmon * * shall
be issued to any person who is not a citizen of the
United States and who has not been an actual resident
of the state for one year immediately preceding the
application for such license.'' Section 122 provides
that ''it shall be unlawful for any person or persons,
firm or corporation to engage in the business of buy-
ing, selling, canning, packing, preserving, peddling
or otherwise dealing in salmon * * without first hav-
ing obtained a license therefor.'' Section 33 provides:
''The term 'person' or 'persons' used in this act shall
be deemed to include partnerships, firms, associations
and corporations.'' This section has not been
amended or repealed. Under these provisions, cor-
porations, when licensed, whether domestic or foreign,
are authorized to do any act in connection with the
salmon industry except the act of actually catching
and taking the fish from the water. The statutory
direction that the word ''person'' shall include cor-
porations is general in its nature and cannot prevail
over the specific special direction of the statute that
no person can be licensed to take fish except a citizen
of the United States and a resident of the state and
the specific direction that it shall be unlawful for any
person who is not such citizen and not such resident
to take fish. The specific special direction must pre-
vail over the general direction that the word ''per-
son'' shall include a corporation in every case where

the evident intent of the legislature was that the specific, and not the general, direction of the statute should prevail.

Section 137, in the original act, and before the amendment, was inconsistent with the other provisions of the statute to which attention has been called. It was evidently the intention of the legislature to do away with this inconsistency and to make the statute in all of its provisions consistent.

Under the view which we take of the statute and which we think conforms to the intention of the legislature, each person, before operating a gill-net for the purpose of fishing for salmon, must obtain a license which license cannot be issued to anyone who is not to be personally engaged in its operation, and that before any person can obtain a license to operate a gill-net he must be a citizen of the United States and a resident of the state for more than one year prior to the filing of his application for a license. The effect of the statute is to deny the right to be licensed to operate gill-nets to any corporation, domestic or foreign, and to any nonresident natural person.

The plaintiff, being a corporation, is an artificial person. As such it has a distinct existence entirely separate and apart from its stockholders, directors, agents and employees: 1 Cook on Corporations, (7 ed.), § 1. Being an artificial person, it cannot, in the nature of things, personally operate gill-nets or operate them at all, except through its servants and employees. The words "engaged personally in the operation of said gill-net" as used in the statute manifestly means "done in person and without the intervention of another." See Webster's New Inter. Dict. It lacks, therefore, the requisite qualification

imposed by statute to entitle it to the issuance of a gill-net license which, by the terms of the statute, can be issued only to natural persons. Being a Delaware corporation, its domicile, residence and citizenship is in Delaware, the state where it was incorporated. Since the plaintiff is a foreign corporation and a resident and citizen of the state of its creation, it possesses no greater constitutional right to fish for salmon in the public waters of this state than that of nonresident, natural persons. We are not passing upon the rights and privileges of a domestic corporation. As the statute is valid (see *Alsos* v. *Kendall, supra*) and its enforcement does not deprive nonresident natural persons of any constitutional right it cannot have that effect upon the plaintiff, who has no greater right than a nonresident natural person.

For these reasons the decree of the Circuit Court holding that the plaintiff is not entitled to be licensed to operate a gill-net must be affirmed.    AFFIRMED.